AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT

6/24/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DTA _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**

Jun 24, 2021

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY  *Nancy Boehme*
Deputy Clerk, U.S. District Court

United States of America

v.

Charles Anthony Thomas III,

Defendant(s)

Case No.
8:21-mj-00440-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 2020 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028(a)(7) | Unlawful possession and use of means of identification |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Julie Sawyer, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        June 24, 2021

City and state:   Santa Ana, California

AUSA: C. Pell
(Ext. 3542)

**DOUGLAS F. McCORMICK**
*Judge's signature*

Hon. Douglas F. McCormick, U.S. Magistrate Judge
*Printed name and title*

# **A F F I D A V I T**

I, Julie Sawyer, being duly sworn, declare and state as follows:

## I.   **PURPOSE OF AFFIDAVIT**

1.    I make this affidavit in support of a criminal complaint against and arrest warrant for Charles Anthony THOMAS III for violation of Title 18, United States Code, Section 1028(a)(7) (unlawful possession and use of means of identification).

2.    The facts set forth in this affidavit are based upon my personal observations, my review of the documents and records discussed herein, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. **SUMMARY OF PROBABLE CAUSE**

3.    FBI discovered that defendant Charles Anthony THOMAS III has been engaged in a years-long identity theft scheme throughout Orange County and the Inland Empire.

4.    In January 2020, the Orange County Sheriff's Department (OCSD) arrested THOMAS after he had purchased almost a thousand dollars' worth of merchandise from Kohl's in Yorba Linda, California, while posing in the identity of someone else

1

and using that person's credit card.

5.   Subsequent investigation uncovered that THOMAS has been stealing other people's identities.  Not only has THOMAS being using a credit card in someone else's name, but he also has been using stolen identity information to open bank accounts, including by fraudulently creating email accounts in those victims' identities.

6.   Thus far, the investigation shows that THOMAS unlawfully possessed the identity information of more than 40 victims, including driver's licenses and debit/credit cards, and he opened more than 10 bank accounts in other people's names.

### III. <u>BACKGROUND OF AFFIANT</u>

7.   I am a Special Agent with the Federal Bureau of Investigation, where I have been employed since May 2017.  I am currently assigned to investigate white collar crime, and my duties include the investigation of wire, mail, and securities fraud.  I attended the FBI academy and have received specialized training related to investigating white collar crime.  I have experience in conducting surveillance, analyzing financial records, interviewing witnesses, drafting affidavits for search warrants and arrest warrants, and in executing arrest and search warrants and other investigative techniques.

8.   Through my training and experience, including discussions with other law enforcement officers experienced in investigating crimes involving fraud and identity theft, I have become familiar with the methods used by people who commit identity theft related fraud.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

Based upon my interviews of witnesses, review of police reports, seized evidence, and bank, financial, and phone records, as well as discussions with local law enforcement officers, I know the following:

**A.** <u>**January 2020: THOMAS is arrested for using a credit card in someone else's name to purchase merchandise from Kohl's in Yorba Linda, California.**</u>

9. <u>Summary</u>: THOMAS used someone else's credit card to purchase merchandise from Kohl's, but when his car was searched, many other people's identity information was found, including driver's licenses, credit cards, checkbooks, tax records, and other financial documents (*e.g.*, correspondence from credit card companies/banks).

1. <u>THOMAS is arrested by OCSD for using someone else's credit card, and officers find identity information of more than 40 people in his car.</u>

10. Based upon my review of reports and documents (including photographs) received from OCSD, I learned the following:

11. On January 24, 2020, OCSD deputies were flagged down by a Kohl's loss prevention offer based upon a suspicious shopper.

12. Deputies then observed an individual later identified as THOMAS loading items into a white Nissan SUV.

13. The deputies searched law enforcement databases and determined that that vehicle had been reported as stolen, with

THOMAS listed as the suspect.

14.   Deputies watched THOMAS walk inside another store, and then detained him.  THOMAS admitted that he had a parole violation warrant, and said that he had a bindle of methamphetamine inside his right sock.  Deputies then searched THOMAS and found a glass pipe in his right front pants pocket, and two small black plastic baggies containing a white crystalline substance inside his right sock.

15.   Deputies also found a wallet inside THOMAS's pants pocket.  The wallet contained a Kohl's credit card in the name of N.R.H. and approximately $1,400 in cash.

16.   Deputies then confirmed that THOMAS was on parole and had an active violation warrant.

17.   The Kohl's loss prevention officer told the deputies that he confirmed that THOMAS had just used a Kohl's credit card in the name of N.R.H. to purchase approximately $1,000 worth of merchandise at Kohl's.

a.   I also obtained and reviewed video from Kohl's, in which I observed THOMAS making the purchases.

b.   I also reviewed the Kohl's receipt from that purchase, which reflected that THOMAS had used N.R.H.'s credit card to charge $700 and $80 cash to complete a purchase totaling $778.42.  The merchandise cost approximately $980, but the final total had been reduced because when making the purchase, THOMAS used $120 of "Kohl's cash" and several "buy one-get one" offers.

18.   Deputies then searched the vehicle that THOMAS was using:

4

   a. Inside the glove compartment, they found a gift
bag containing more than 29 credit cards and 4 California
driver's licenses, all in other people's names:



   b. On the front passenger seat, there was a black
suitcase that contained multiple pieces of mail from various
addresses in the cities of Yorba Linda and Anaheim, California.
In addition, there were two notebooks containing hand written
entries containing PII for multiple people:



   c. Also found in the vehicle was a 15% off Kohl's
coupon in N.R.H.'s name, with mailing address on Tippecanoe

Ave., in San Bernardino, California.  (As discussed below, that address is tied to THOMAS, and has never been used by N.R.H.)

        d.  Officers also found several check booklets for bank accounts, bank statements, credit card bills, DMV mail, social security mail, ADP earning statement, and tax records, all in other people's names.

19.  More than 40 different persons' identity information was contained in the notebook, credit cards, and other items found in the vehicle THOMAS was using.

20.  After waiving his *Miranda* rights, THOMAS agreed to interview with the deputies.  THOMAS stated:

        a.  He had rented the vehicle approximately one month ago and did not return it when it had been due the previous week, even though a representative from the car rental business had called him and told him the vehicle was overdue.

        b.  The methamphetamine and pipe were his, and he had last smoked methamphetamine earlier in the day.

        c.  N.R.H. was his "friend" from Moreno Valley, and she had given him permission to use the Kohl's credit card in her name.  (As discussed below, N.R.H.'s interview statements show that statement by THOMAS was false.)

        d.  The black suitcase and all of its contents belong to his friend "Mario" from La Mirada.

21.  THOMAS was then arrested for Burglary, in violation of California Penal Code Section 459; Larceny, in violation of California Penal Code Section 496d(a), and his parole warrant.

2. <u>Victims confirm that they had not given THOMAS permission to possess or use their identity information or debit/credit cards.</u>

22. <u>Victim N.R.H.</u>: On August 24, 2020, I interviewed N.R.H., who was the person whose name was on the Kohl's card that THOMAS had used to purchase the Kohl's merchandise on January 24, 2020 (when he was arrested by local law enforcement). N.R.H. told me that her car had been stolen in 2019, and had her wallet with her identification information in it when it was stolen. N.R.H. said that she never gave anyone permission to use her Kohl's card, other than her husband.

23. <u>Victim H.I.</u>: One of the CDLs found in the car THOMAS was using on January 24, 2020 was in the name of H.I.

a. On that same date, January 24, 2020, an Anaheim PD officer went to H.I.'s address of record and interviewed him, and I reviewed the report of that interview. From that review, I learned:

b. H.I. stated that he currently had his California identification card and California driver's license.

c. In January 2019, he had applied for his California driver's license, which he was supposed to receive by mail.

d. After a month of waiting, he never received the driver's license, so he had to go to the DMV in person to receive a replacement

e. He did not give anyone permission to possess his driver's license, and desired prosecution.

24.  <u>Victim J.S.</u>: One of the CDLs found in the car THOMAS was using on January 24, 2020 was in the name of J.S.

        a.   On August 20, 2020, I interviewed J.S., who said the following:

        b.   J.S. previously lost or misplaced his driver's license, so J.S. went to the DMV to obtain a Real ID license.

        c.   J.S. was told to expect his Real ID within two weeks, however J.S. never received it.

        d.   Around this time (mid-January 2020), J.S. was aware that mail was stolen from several houses in J.S.'s neighborhood. J.S. assumed that his Real ID was stolen from his mailbox at that time.

        e.   After the loss of J.S.'s license, J.S. was aware of multiple attempts to create bank accounts in his name.  J.S. received mail from several banks where he was not currently banking, which stated that accounts had been opened in J.S.'s name and ready for use.

        f.   J.S. was aware of accounts opened in his name at Bank of the West, Bank of America, U.S. Bank and Citi Bank.

        g.   J.S. did not open any of those accounts.

   **B.   <u>FBI investigation uncovers that THOMAS possessed other people's identity information and used it to open bank and email accounts in their names.</u>**

25.  <u>Summary</u>: THOMAS opened more than five bank accounts using identity information of other people, including victims T.Mc., D.G., I.A., and F.Q.

1.   <u>Victim N.R.H.</u>

26.   On August 20, 2020, I interviewed N.R.H. regarding her Kohl's card in the name of N.R.H. that THOMAS had used in January 2020 and had been found in his vehicle.

a.   She told me that after her car was stolen, she had cancelled her credit cards, including her Kohl's credit card account.  However, in December 2019, she received an email from Kohl's that her card had been used.

b.   N.R.H. said that on January 25, 2020, she received an email from Kohl's that welcomed her back to Kohl's, even though she had not signed up for a new card with Kohl's nor reactivated her account with Kohl's.

c.   After receiving a statement dated February 2020 with a balance, she also noticed that there had been a purchase that she had not made.

d.   N.R.H. then spoke to Kohl's, which informed her that her address had been changed to "7188 Tippecanoe" in San Bernardino, and the email address for her account had been changed to an email address that was not hers.  She also said that she had never lived at nor changed her address to that address in San Bernardino.

27.   I reviewed the notebook containing PII that was found in THOMAS's car on January 24, 2020.  That notebook contained PII related to victim N.R.H., including N.R.H.'s name and DOB, N.R.H.'s Kohl's account number, username and password, and an email address (not created by N.R.H.).

28.   I obtained and reviewed information from Kohl's

related to N.R.H.'s Kohl's account.  From that review, I learned that:

a.   On November 8, 2019, the email address for N.R.H.'s Kohl's account was changed to cruncht1xxxxxx@gmail.com, and the phone number was changed to 714-xxx-8482.  That same day, the physical address was changed to 7188 Tippecanoe Ave., San Bernardino, California.

b.   On January 22, 2020, the email address was changed again, to [N.H.]31@gmail.com.

29.  N.R.H. told me that N.R.H. had not made such changes to her Kohl's account.

30.  I obtained phone records that showed that the phone number listed as the contact number on N.R.H.'s Kohl's card, 714-xxx-8482, is registered to L.B. at the home address listed on THOMAS's California driver's license.  I confirmed that L.B. is THOMAS's grandfather.

31.  I obtained lease records that show that the 7188 Tippecanoe Unit A was leased by M.S. On December 11, 2019, THOMAS was arrested by Upland Police Department officers with M.S. while driving a stolen vehicle.  THOMAS told the arresting officers that M.S. was his girlfriend.

32.  I obtained subscriber information for email address cruncht1xxxxxx@gmail.com.  Those records show that this email is registered to THOMAS.

2.   <u>Victim T.Mc.</u>

33.  Officers found identity information of victim T.Mc. inside the vehicle that THOMAS was using on January 24, 2020,

including a Wells Fargo debit card in T.Mc.'s name.

34.  I obtained information from Bank of the West regarding checking and savings accounts that had been opened in victim T.Mc.'s name.

35.  From those documents, I learned that:

a.  On or about October 26, 2019, checking and savings accounts ending in 4977 and 3557, respectively, had been opened in victim T.Mc.'s name at the Bank of the West.

i.  Those accounts had been opened using T.Mc.'s PII, as well as telephone number 714-xxx-8482, email address [T.Mc]1331@gmail.com, recovery email crunch1xxxxxx@gmail.com, and a mailing address on Tippecanoe Ave. in San Bernardino.

ii.  Multiple checks were deposited into checking account ending in 4977, which were ultimately returned as unpaid.  Those deposited checks all had signatures purporting to be from T.Mc.

iii. Approximately $2,900 in debits and ATM cash withdrawals in Anaheim or San Bernardino were conducted using cards tied to account ending in 4977.

36.  On or about November 5, 2020, I interviewed T.Mc.  She told me the following:

a.  She received multiple phone messages alerting her that she had applied for multiple credit cards, for which she had not applied.

b.  She then went online to a credit reporting agency, and saw that there were many applications for credit cards, checking accounts, and savings accounts that she had not

11

initiated.

        c.   She said that she went through the list and called each entity to alert it that she had not applied for the referenced account.

        d.   In 2019, she realized that her driver's license had expired and that she had not received a notice in the mail that her license was expiring shortly.  She eventually obtained a renewed license.

        e.   She never opened a bank account at Wells Fargo or Bank of the West. She did not cash or receive any of the checks transacted on those accounts.  Likewise, she did not make any purchases using a Bank of the West debit card. Specifically, she did not make any purchases with a Bank of the West debit card in November 2019 in San Bernardino or Anaheim.

        f.   She has never lived on Tippecanoe Avenue in San Bernardino and did not use or create email address [T.Mc.]1331@gmail.com.

        g.   She has never used telephone number 714-xxx-8482.

        h.   In November 2019, she received notice from U.S. Bank that informed her that someone had attempted to open three accounts and one credit card in her name, which she had not authorized.

   37.  I obtained subscriber information for email address crunch1xxxxxx@gmail.com, which was listed as the recovery email for the Bank of the West bank account opened in victim T.Mc.'s name.  Those records show that this email is registered to THOMAS.

38.   I obtained phone records that showed that one of the phone numbers used to open the bank account in victim T.Mc.'s name at the Bank of the West ending in 4977, 714-xxx-8482, is registered to L.B. at the home address listed on THOMAS's California driver's license.   (As indicated above, I confirmed that L.B. is THOMAS's grandfather.)

3.   <u>Victim D.G.</u>

39.   Deputies found identity information of victim D.G. inside the vehicle that THOMAS was using on January 24, 2020, including a Bank of the West debit card and Bank of the West checks from an account in victim D.G.'s name.   Moreover, the notebook found in the vehicle contained victim D.G.'s PII, as well as the bank account information for a bank account opened in victim D.G.'s name.

40.   I obtained information from Bank of the West regarding checking and savings accounts ending in 3371 and 6690, respectively, that had been opened in victim D.G.'s name.

41.   From my review of those records, I learned that:

a.   On or about December 30, 2019, checking account ending in 3371 had been opened in victim D.G.'s name at the Bank of the West.

i.   That account had been opened using D.G.'s PII, as well as telephone number 909-xxx-6534, email address [D.G.]1331@gmail.com, and a mailing address on Tippecanoe Ave. in San Bernardino.

ii.   Multiple checks were deposited into that account, which were ultimately returned as unpaid.   One

deposited check had a signature purporting to be from D.G.

               iii. Multiple checks were also written from that account, which had signatures purporting to be from D.G.

42. On or about November 23, 2020, I interviewed D.G.  He told me the following:

       a.   Sometime in mid-2019, he received a call from an out-of-state police department because a vehicle had been rented in his name, and then abandoned.  The police told him that there were also credit cards in his name in the vehicle.  He told the police that he had not rented that vehicle.

       b.   He never opened an account with Bank of the West. I asked him about some of the checks that were either deposited or cashed in the bank account listed above, and he confirmed that he did not do those transactions.

       c.   He did not create or use email account [D.G.]1331@gmail.com.

       d.   He never lived at nor had mail sent to an address on Tippecanoe in San Bernardino, California.

       e.   He never used the phone number 909-xxx-6534.

       f.   He never gave permission for anyone to use any of his credit or debit cards.

       4.   <u>Victim I.A.</u>

43. Officers found identity information of victim I.A. inside the vehicle that THOMAS was using on January 24, 2020, including a JC Penny card in victim I.A.'s name, a receipt of a purchase using that card in San Bernardino in January 2020, and a PayPal Mastercard in victim I.A.'s name.

44.   I obtained information from Bank of the West regarding account ending in 8681 that had been opened in victim I.A.'s name.

45.   From my review of those records, I learned that:

a.   On or about August 27, 2019, an account ending in 8681 had been opened in victim I.A..'s name at the Bank of the West.

i.   That account had been opened using I.A.'s PII, as well as telephone number 714-xxx-9058, email address [I.A.]1331@gmail.com, and a mailing address on N. West Ave. in Anaheim, California.

ii.   Multiple checks were deposited into that account.  The deposited checks I reviewed had signatures purporting to be from I.A.

iii. There were also debit and ATM transactions on that account, as well as checks were ordered.

46.   On or about November 16, 2020, I interviewed I.A. During that interview, he told me the following:

a.   In or about September 2019, his phone was stolen, which also contained his social security card and PII.  He reported that theft to his banks and the police.

b.   He had had applied for a JC Penny charge card but never received the actual card in the mail.  He did not make any purchases from a JC Penny in San Bernardino in January 2020.

c.   He never opened an account with Bank of the West.

d.   He did not create or use email account [I.A.]1331@gmail.com.

15

   e. He never lived an address on Tippecanoe Avenue in San Bernardino, California, or an address on N. West Street in Anaheim, California.

   f. He never used the phone number 714-xxx-9058.

   g. Recently, he received calls from loan companies about attempts to take out loans in his name, which he did not authorize.

  47. I researched law enforcement and public databases and financial documents, from which I learned the following:

   a. The address on N. West Street in Anaheim, California, was listed as THOMAS's home address on his California driver's license.

   b. That address was also listed as THOMAS's home address on a Wells Fargo bank account opened in THOMAS's name.

   5. <u>Victim F.Q.</u>

  48. Officers found identity information of victim F.Q. inside the vehicle that THOMAS was using on January 24, 2020, including a visa card in victim F.Q.'s name.  I obtained records from Bank of the West.  From my review of those records, I learned that:

  49. On or about August 28, 2019, checking account ending in 9481 had been opened in victim F.Q.'s name at the Bank of the West.

  50. That account had been opened using F.Q.'s PII, as well as an email address [F.Q.]92882@gmail.com, and a mailing address on N. West Ave. in Anaheim, California. (As related above, that address on N. West Street in Anaheim was listed as THOMAS's home

16

address on his California driver's license, and was also listed as THOMAS's home address on a Wells Fargo bank account opened in THOMAS's name.)

51.   Multiple checks were deposited into that account. The deposited checks I reviewed had signatures purporting to be from F.Q.  Each of the checks were drawn on accounts from different individuals whose addresses on the check were listed on N. West St. in Anaheim, California.  There were also checks ordered for the account.

52.   As of present, I have been unable to interview F.Q., but the opening of this bank account matches defendant's scheme.

### V.   CONCLUSION

53.   Based on the information set forth above, there is probable cause to believe that Charles Anthony THOMAS III violated Title 18, United States Code, Section 1028(a)(7) (unlawful possession and use of means of identification).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 24th day of June
2021.

## DOUGLAS F. McCORMICK

HONORABLE DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE